UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-23673-Civ-SCOLA/TORRES

KOMAR INVESTMENTS, INC. d/b/a
SOUTH BEACH MARRIOTT,

       Plaintiff,

v.

ZURICH AMERICAN INSURANCE COMPANY,

       Defendant.

_____/

## ORDER ON DEFENDANT'S MOTION TO COMPEL

This matter is before the Court on Zurich American Insurance Company's ("Defendant" or "Zurich") expedited motion to compel destructive testing. [D.E. 20]. Komar Investments, Inc. d/b/a South Beach Marriott ("Plaintiff") responded to Defendant's motion on May 11, 2019 [D.E. 23] to which Defendant does not intend to reply.[1]  Therefore, Defendant's motion is now ripe for disposition. After careful consideration of the motion, response, relevant authority, and for the reasons discussed below, Defendant's motion to compel is **GRANTED**.

## I.   ANALYSIS

This is a first-party insurance coverage dispute where Plaintiff seeks more than $16 million dollars in damages because of Hurricane Irma. The property at issue is the Marriott Stanton South Beach Hotel, located at 161 Ocean Drive, Miami

---

[1]    Defendant's counsel notified Chambers that it does not intend to file a reply in support of its motion to compel.

Beach, Florida 33139.   On January 14, 2019, Defendant served Plaintiff with a request to enter the hotel to permit Defendant's experts to inspect, measure, survey, photograph, test, and/or sample the property, including (1) the interior, (2) the exterior elevations, (3) the roof, and (4) all other building components to the extent not otherwise identified.

Defendant requested that the inspection occur in two stages.   The first stage consisted of a preliminary, single-day walkthrough of the property to survey its dimensions and determine the accessibility of all elevations.   This was designed to help Defendant's experts determine the amount of time reasonably necessary to complete a full-scale inspection of the areas that Plaintiff alleges were damaged. Plaintiff allowed Defendant's experts to conduct a two-hour walkthrough on February 26, 2019.

The second stage of Defendant's requested inspection is a complete, full-scale inspection of all areas of the property that sustained damages because of Hurricane Irma.   Defendant claims that it reported to Plaintiff that it would need ten full working days to inspect all areas of the property that Plaintiff alleges were damaged.   Plaintiff initially resisted Defendant's request because it was the hotel's "busy season," but Plaintiff's counsel provided proposed dates on April 8, 2019 for the inspection to take place in mid to late May 2019.   As such, the full-sale inspection was scheduled to take place during the weeks of May 13-17 and May 20-24, 2019.

Following the scheduling of the inspections, the parties continued to discuss the proposed logistics of the inspection.  On April 15, 2019, the parties engaged in a lengthy telephone conference, including a discussion on the use of destructive testing.  Defendant informed Plaintiff that Defendant's experts sought to conduct testing to the stucco, roof, and pool desk.  The testing included collecting samples of the stucco, taking samples of the roof, and lifting tiles along the pool deck.  Defendant also stated that it was prepared to have a contractor on site during the inspections to make necessary repairs and invited Plaintiff to advise of any preferred contractors.  Defendant sent a follow-up email on April 23, 2019 to inquire on the prior conversation – including the identity of any preferred contractors – and Plaintiff responded on April 30, 2019 that it objects to any destructive testing.

Plaintiff opposes Defendant's motion for several reasons.  First, Plaintiff claims that destructive testing is unreasonable, unnecessary, overbroad, and prejudicial.  Plaintiff is concerned that the destructive testing will disrupt business operations, guest experiences, tarnish the hotel's brand, and create additional damages to the property.  Second, Plaintiff argues that Defendant has not assured the hotel that any damages sustained because of the destructive testing will be minimal and that the property will be restored to its current condition.  Although Defendant contends that a contractor will be on site to perform any repairs, Plaintiff suggests that there are no guarantees that the building will be returned to its pre-testing condition or that the integrity of the building will not be further compromised.  Third, Plaintiff takes issue with Defendant's request to take six 12

by 12 samples of the stucco because it allows Defendant to destruct over thirty-six feet of the exterior for testing.  Plaintiff believes that this is excessive, and that Defendant would need to re-paint the entire building to avoid inconsistencies between fresh paint in the areas tested with paint throughout the rest of the building.  And finally, Plaintiff is concerned that, if any tiles are removed from the pool deck area, Defendant must provide matching tiles to restore the pool to its pre-testing condition.

"Several courts have recognized that production of 'tangible things' for purposes of destructive testing falls under the scope of Rule 34." *Mirchandani v. Home Depot, U.S.A., Inc.*, 235 F.R.D. 611, 613 (D. Md. 2006) (collecting cases). Federal Rule of Civil Procedure 34 provides that a party "may serve on any other party a request within the scope of Rule 26(b): to produce and permit the requesting party or its representative to inspect, copy, test, or sample . . . any designated tangible things" in the responding party's possession, custody, or control. Fed. R. Civ. P. 34(a)(1) (B).  In turn, Federal Rule of Civil Procedure 26(b) provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."

The decision of whether to allow testing, destructive and non-destructive alike, rests within the sound discretion of the district court.  *See Ramos v. Carter Exp. Inc.*, 292 F.R.D. 406, 408 (S.D. Tex. 2013) (citing *Ostrander v. Cone Mills, Inc.*, 119 F.R.D. 417, 419 (D. Minn. 1988)).  In the exercise of that discretion, district

courts have identified four specific factors to consider in balancing the costs of altering the object against the benefits of obtaining the evidence sought:

> (1) [W]hether the proposed testing is reasonable, necessary, and relevant to proving the movant's case; (2) whether the non-movant's ability to present evidence at trial will be hindered, or whether the non-movant will be prejudiced in some other way; (3) whether there are any less prejudicial alternative methods of obtaining the evidence sought; and (4) whether there are adequate safeguards to minimize prejudice to the non-movant, particularly the non-movant's ability to present evidence at trial.

*Mirchandani,* 235 F.R.D. at 614. "Several courts have found this framework instructive in determining whether destructive testing is appropriate under the circumstances." *Rapchak v. Freightliner Custom Chassis Corp.*, 2014 WL 4169393, at *4 (W.D. Pa. Aug. 20, 2014) (citing cases).

With respect to the first factor, "a party may not use destructive testing merely to bolster an expert opinion or to gain other potentially intriguing, albeit irrelevant, information." *Mirchandani*, 235 F.R.D. at 615. The evidence sought must instead "be integral to proving the movant's case and do more than strengthen an already established claim or defense." *Id.* While the evidence sought through destructive testing must be necessary for a party to prove its case, "the burden is not so high as to require definitive proof that plaintiffs' hypothesis will prove correct." *Id.*

Based on these considerations, Defendant has shown that the proposed testing is relevant, reasonable, and necessary because destructive testing is needed to examine the (1) nature, (2) extent, and (3) cause of the alleged damage to the hotel. The evidence is also significant because it can only be accessed with samples

of the stucco, roof materials, and pool tiles.  Accordingly, the initial factor weighs in favor of Defendant.

The second factor considers any potential prejudice to the non-moving party. This factor favors Defendant because Plaintiff, as the non-movant, failed to identify how it will be prejudiced in its ability to litigate this case.  Plaintiff focuses instead on its business operations, guest experiences, and the potential for additional damages to the hotel.   But, none of these considerations relate to any prejudice in presenting evidence at trial.  Defendant, on the other hand, would be prejudiced at trial because it would be entirely dependent on the photographs and data of other individuals, as opposed to its own experts.   Because Plaintiff has failed to demonstrate any prejudice in litigating this case at trial, the second factor weighs in favor of Defendant.

"The third area of inquiry is whether there are any non-destructive alternative methods of testing." *Mirchandani*, 235 F.R.D. at 616.  "[T]his prong encourages the party opposing destructive testing to suggest less destructive and less prejudicial counter-proposals, and appears to be limited only by the imagination of the non-movant."  *Id*.  Plaintiff has not submitted any viable alternatives to Defendant's proposed testing and Defendant contends that there none available.  Therefore, given the record presented and the absence of a viable alternative, the third factor favors Defendant.

"The final inquiry of the four-pronged test involves consideration of the safeguards that may be put in place to minimize the potential for prejudice to the

non-movants." *Mirchandani*, 235 F.R.D. at 616–17.  Those safeguards, while not

exhaustive, include:

> (1) Adequate opportunities for the non-movants to photograph or otherwise record the character and condition of the object to be tested prior to the destructive testing, (2) notice to the non-movants of the time, place, and exact manner of the destructive testing, (3) reasonable opportunity for the non-movants and their experts to observe and record the procedures involved in the destructive testing, (4) the right of the non-movants to conduct or participate in similar tests with a portion of the sample to be tested, (5) provision for discovery of the results of the movant's tests, (6) allocation of costs as justice may require.

*Id*. at 617 (citation and alterations omitted).

Plaintiff is concerned that the hotel will sustain irreparable damages and

that there is no guarantee that the building will be restored to its pre-testing

condition.  Plaintiff's concern is a valid one, but ultimately misplaced because

Defendant wants a contractor on site during the testing to make immediate repairs.

While Plaintiff suggests that the integrity of the building is at risk and that the

hotel may need to be entirely repainted, there is nothing in the record to support

these contentions.  And Plaintiff noticeably sidesteps Defendant's contention that

Plaintiff's own engineering expert already used destructive testing on the building

in connection with the development of an expert opinion.  Because the four factors

weigh in favor of allowing Defendant to conduct destructive testing, Defendant's

motion to compel is **GRANTED**.

## II.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendant's motion to compel is **GRANTED**.  The parties are directed to coordinate a schedule to allow Defendant ten full working days to conduct the destructive testing.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 16th day of May, 2019.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge